[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10545

Non-Argument Calendar

_____

ELENA ZHANADOVA,

Plaintiff-Appellant,

*versus*

WAL-MART STORES EAST, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60668-RS

_____

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Elena Zhanadova appeals the district court's order granting summary judgment in favor of defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP, ("Walmart") in her "slip and fall" negligence suit under Florida law.  Zhanadova argues that the district court erred in granting summary judgment because there were disputed issues of material fact related to Walmart's actual notice of the spill and whether it had sufficient time to remedy the dangerous condition.  After review, we affirm.

## I.    Background

The events giving rise to this negligence action occurred over less than a three-minute period on the evening of July 8, 2018, at a Walmart in south Florida.  That evening, at approximately 6:46:53 p.m. another Walmart customer spilled juices from a rotisserie chicken container onto the floor at one of the self-checkout registers.  That customer finished checking out approximately two minutes later at 6:48:56 p.m.  A few seconds later at 6:49:07 p.m., Zhanadova approached the same self-checkout register and began checking out.  Within approximately 20 seconds of being at the register, Zhanadova slipped and fell on the chicken drippings.  At the time that she fell, it is undisputed that a Walmart employee was approaching her carrying paper towels, presumably to clean up the spill.

Thereafter, Zhanadova brought a multi-count negligence action against Walmart and unnamed store managers of this particular Walmart in Florida state court, seeking damages for injuries that she suffered from the slip, including injuries to her back and neck. In her complaint, she alleged that Walmart had a duty to use ordinary care to keep the premises in a reasonably safe condition for its patrons. She maintained that Walmart knew or should have known about the dangerous condition and should have taken the necessary steps to remedy the dangerous condition or warn patrons of its existence. And as a direct and proximate cause of Walmart's negligence, she fell and suffered injuries. Walmart removed the action to federal court based on diversity jurisdiction.

Zhanadova explained during her deposition that on the day in question she was at the self-checkout register in Walmart with a friend, when she "heard some kind of yelling or some noise" similar to shouting or yelling. Zhanadova, who does not speak English, did not understand what was being said. Zhanadova looked up and saw a Walmart employee "running toward [her]" from "far away where the other [non-self-checkout] cash registers" were, and the employee "was shouting something," "waving," and "holding something white in her hand." Zhanadova explained that she could tell by the way the employee was approaching her and waving at her that she was "trying to warn [Zhanadova] about some kind of danger." Zhanadova explained that she looked around and realized that there were no other customers near her and that they seemed to be avoiding the register area where

Zhanadova was standing.  Because people had moved away from the area and a Walmart employee was running toward her yelling something, Zhanadova became very scared.  She stated that another woman approached her from behind and was speaking to her, but Zhanadova did not understand what the woman was saying due to the language barrier.  She stated that the woman from behind took her hand and gently started pulling her backwards, while pointing to the floor with her other hand.[1]  Zhanadova did not know whether or not the woman behind her that pulled her backward was a Walmart employee, and she could not say what the woman was wearing.  Zhanadova stepped backward and slipped and fell.  Zhanadova did not see anything on the floor before she slipped, and she maintained that "when [she] . . . approached th[e] self-help register, everything there in that area was dry and clean . . . ."  After she fell, Zhanadova realized there was "like an oily liquid" puddle on the floor.  Zhanadova stated that no Walmart employee told her not to go near the area where she fell prior to the fall.

---

[1] Although Zhanadova stated that a woman came behind her and took her hand and pulled her backward gently, the video footage of the incident refutes this statement.  No one appears behind Zhanadova in the video or touches her.  Although at the summary judgment stage we view the evidence in the light most favorable to the non-moving party, when, as here, the non-moving party's version of events is blatantly contradicted by video evidence in the record, we do not accept the non-moving party's version of events to the extent of the contradiction.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  Thus, we do not accept Zhanadova's statement that someone came up behind her at the register and pulled her backward gently prior to her fall.

23-10545                Opinion of the Court                5

Walmart moved for summary judgment, arguing that it was entitled to summary judgment because Zhanadova could not show that Walmart had actual or constructive knowledge of the dangerous condition, which existed for only 2 minutes and 32 seconds prior to Zhanadova's fall. Zhanadova opposed Walmart's motion for summary judgment, asserting that the CCTV footage of her fall established that Walmart had actual knowledge of the spill prior to her fall.[2] Specifically, she maintained that the video established that three Walmart employees were aware of the spill prior to her fall. First, she asserted that the spill occurred at 6:46:54 p.m. when another customer spilled liquid from a container of chicken. Second she maintained that at 6:47:23 p.m. another person outside of the view of the camera walked towards the spill. Even though only the unknown individual's shoes are visible in the video, Zhanadova asserted that this person must have been a Walmart employee and that the employee must have seen the spill because the individual appeared to be carrying "a yellow rag." But, after walking towards the spill, the person retreats and disappears from the camera's view without taking any steps to clean the spill or block off the area.

Next, she maintained that a second Walmart employee saw the spill at 6:48:04 p.m., pointing to the fact that in the upper left hand portion of the video "from the opposite side of the self-check-

---

[2] Although Zhanadova briefly addressed constructive notice in her motion, she maintained throughout the motion that this case was about Walmart's actual knowledge.

6                          Opinion of the Court                          23-10545

out register" an arm appears to be pointing at something.  She contended that this arm must belong to a Walmart employee because after Zhanadova's fall, this same arm appears at 6:51:49 p.m. handing off a roll of paper towels to a fellow employee to assist with cleanup.

And finally, she asserted that a third employee had actual knowledge of the spill because as seen in the video the employee approached Zhanadova seconds before the fall carrying a few paper towels in her hand and waving toward Zhanadova.  Thus, she maintained that Walmart was liable for her injuries because it had actual notice of the spill prior to her fall and should have taken steps to correct it.

The district court granted Walmart's motion for summary judgment.  The district court explained that only 2 minutes and 32 seconds elapsed between the time of the spill and Zhanadova's fall, and that Zhanadova relied solely on the video footage as proof that three employees knew of the dangerous condition before she fell.  With regard to Zhanadova's allegation that an employee observed the spill at 6:47:23 p.m. prior to the fall, the district court concluded that the video did not show that the individual was an employee as the identity of the individual was not ascertainable from the shoes and possible yellow rag that appeared in the corner of the video frame.  The court noted that Zhanadova, as the non-moving party, had not presented any other evidence to support her claim that the individual in question was in fact a Walmart employee.  Moreover, even if the individual was a Walmart employee, it was unknown

from the video where the employee was looking such that the person saw the spill.  Thus, this first individual did not establish that Walmart had actual knowledge of the spill.

Next, the district court addressed the alleged second employee who purportedly observed the spill based on the arm that appears to be pointing at something in the upper left corner of the video frame prior to the fall.  The court concluded that it could not be ascertained from the video to whom the arm belonged or that the arm was pointing to the spill as opposed to something else in the store.  Thus, Zhanadova failed to establish that Walmart had actual knowledge of the spill via this second person.

As to the third person—the employee seen approaching Zhanadova with paper towels in hand mere seconds before the fall—the district court concluded that this employee demonstrated that Walmart had actual notice of the condition at that point in time.  Nevertheless, Walmart was not liable under Florida law because Walmart did not have a sufficient opportunity following notice of the condition to correct it.  In other words, because Zhanadova did not point to any other evidence showing actual notice of the spill prior to when the Walmart employee approached her at 6:49:22 p.m., mere seconds before the fall, Walmart did not have sufficient time to correct or warn of the condition.  Accordingly, the district court granted Walmart's summary judgment motion, and Zhanadova timely appealed.

## II.    Discussion

Zhanadova argues that the district court erred in granting summary judgment in favor of Walmart because the video footage created a genuine issue of fact as to whether Walmart was on actual notice of the spill, and the district court improperly weighed the evidence at the summary judgment stage.

"We review a district court's grant of summary judgment *de novo*, view[ing] the evidence in the light most favorable to the non-moving party." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*) (quotation omitted). "Although all justifiable inferences are to be drawn in favor of the nonmoving party, inferences based upon speculation are not reasonable. Evidence that is merely colorable, or is not significantly probative of a disputed fact cannot satisfy a party's burden, and a mere scintilla of evidence is likewise insufficient." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotations and internal citations omitted); *see also Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018) ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact."); *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (emphasis in original) (quotation omitted)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted); *see also Hinson v. Bias*, 927

F.3d 1103, 1115 (11th Cir. 2019) ("[A]n inference based on speculation and conjecture is not reasonable." (quotation omitted)).

Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotation omitted)).

When, as here, federal jurisdiction over the negligence case is founded on diversity, state law governs the substantive issues, which in this case is Florida law. *See ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018). "[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). "Where the Supreme Court of Florida has not addressed a particular issue, federal courts are then bound by the decisions of the Florida district courts of appeal that address the disputed issue, unless there is an indication that the supreme court would not adhere to the district court's decision." *Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1168 (11th Cir. 2023) (quotation omitted).

To prove a negligence claim, Florida law requires plaintiffs to show "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 277–78 (Fla. 3d DCA 2017) (quotation omitted). It is undisputed that Zhanadova was a business invitee in Wal-Mart's store, so it owed her "a duty to exercise reasonable care to maintain [its] premises in a safe condition." *Id.* Nevertheless, Wal-Mart "is not an insurer of the safety" of its customers, and it is not "strictly liable . . . for injuries resulting to invitees from dangerous conditions on [its] premises[.]" *Winn–Dixie Stores, Inc. v. Marcotte*, 553 So. 2d 213, 214 (Fla. 5th DCA 1989).

Rather, where a business invitee slips and falls on a "transitory foreign substance," proof of the breach element of the plaintiff's negligence claim is "statutorily constrained" by Florida statutory law. *See Encarnacion*, 211 So. 3d at 278. Specifically, § 768.0755 of the Florida Statutes requires the plaintiff to "prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). Actual knowledge of a dangerous condition exists when a business establishment's employees or agents knew of the dangerous condition. *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001).

Zhanadova maintains that there was a genuine issue of fact about when Walmart was on actual notice of the spill based on the

alleged first employee (identified in the video only by shoes and a partial view of what appears to be a yellow rag) and the alleged second employee (identified in the video only by an arm that is pointing toward something)—both of whom allegedly saw the spill between 1 and 2 minutes prior to Zhanadova's fall. Relatedly, she argues that the district court improperly weighed the evidence when determining whether her inferences from the video were reasonable. She maintains that the video does not directly contradict her version of events, and, therefore, her contentions regarding the first and second employee in the video were reasonable inferences.[3]

Zhanadova's arguments are unpersuasive. Her contention that these individuals in the video are Walmart employees is not a reasonable inference because it is based solely on speculation and conjecture. *Hinson*, 927 F.3d at 1115 ("[A]n inference based on speculation and conjecture is not reasonable." (quotation omitted)); *Daniels*, 692 F.2d at 1324 ("[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." (quotation omitted)). She presented no other evidence tending to show that the individual whose shoes are seen in the video with what looks to be a yellow rag is a store employee. Likewise, she presented no other evidence tending to show that the

---

[3] Zhanadova also faults the district court for not considering her deposition testimony. Zhanadova's contention is belied by the record, as the district court references her deposition testimony in the summary judgment order.

individual whose arm appears in the video pointing toward something is an employee.[4]  At the summary judgment stage, "[i]t is not enough for the nonmoving party to merely assert[] that the jury might, and legally could, disbelieve the moving party's evidence.  Instead, the nonmoving party must present affirmative[, concrete] evidence that would allow a reasonable jury to rule for [her]."    *Hinson*, 927 F.3d at 1115–16 (quotation omitted). Zhanadova failed to come forward with such affirmative, concrete evidence.  *See also Kernel Records Oy*, 694 F.3d at 1301 (explaining that "a mere scintilla of evidence is likewise insufficient" to create a genuine issue of material fact).

Furthermore, even assuming that Zhanadova is correct that these individuals were Walmart employees, there is no evidence in the video or otherwise in the record tending to demonstrate which direction these individuals were looking.    Therefore, even assuming they were employees, it is not a reasonable inference that they observed the spill and could have (or should have) taken action to correct the spill or to warn her of its presence.  *Hinson*, 927 F.3d at 1115; *Daniels*, 692 F.2d at 1324.

---

[4] Zhanadova contends that the individual whose arm is pointing toward something in the video must be an employee because "[t]he person to whom the hand belongs" is subsequently seen providing a roll of paper towels to another employee a few minutes after Zhanadova's fall.  But even assuming, arguendo that the two arms (one left arm and one right arm) seen in the video belong to an employee of Walmart, it is at best a guess and mere speculation that the two arms seen in the camera approximately three and a half minutes apart belong to the *same* employee.

23-10545                Opinion of the Court                13

Rather, viewing all the evidence and reasonable inferences in the light most favorable to Zhanadova, as the district court found, the evidence establishes that Walmart was on actual notice of the spill at 6:49:20 p.m. when the Walmart employee enters the video frame carrying paper towels, which is approximately only three seconds before Zhanadova's fall.[5] As the district court found, under Florida law, this short amount of time is insufficient for Walmart to remedy the dangerous condition or otherwise warn its patrons of its existence, which means that Walmart cannot be held liable for any negligence.[6]    *See, e.g., Dominguez v. Publix Super*

---

[5] Zhanadova argues that the presence of paper towels in this employee's hands establishes that the employee already knew of the issue, and we agree that the conclusion that the employee "already knew" of the spill necessarily follows from the fact that the employee was carrying a few paper towels in her hand. The problem for Zhanadova is that there is nothing in the record that tends to show *when* that employee first became aware of the spill, and when the employee was on notice of the dangerous condition is key to the negligence inquiry. In other words, based on the record, we are left to speculate as to when this employee was on notice of the spill, which is insufficient to survive summary judgment. *Glasscox*, 903 F.3d at 1213 ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact."); *see also Cordoba*, 419 F.3d at 1181 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quotation omitted)).

[6] Zhanadova argues that the amount of time that a spill exists prior to a customer's fall is not dispositive and does not warrant granting summary judgment, citing our unpublished decision in *Perez-Brito v. Williams-Sonoma Stores, Inc.*, 735 F. App'x 668 (11th Cir. 2018). Zhanadova's argument is unpersuasive. As an initial matter, *Perez-Brito* is an unpublished, non-binding case. *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022) ("Our unpublished opinions are not precedential"; "they do not bind us or district

*Markets, Inc.*, 187 So. 3d 892, 893–94 (Fla. 3d DCA 2016) (holding that grocery store was not liable for negligence where thirteen seconds passed between the time the store employee heard the bottle of detergent fall from the shelf and when the customer slipped); *Gaidymowicz v. Winn-Dixie Stores, Inc.*, 371 So. 2d 212, 214 (Fla. 3d DCA 1979) (holding that the grocery store was not liable because it did not have a sufficient opportunity to correct the dangerous condition where it had only one minute of actual notice of the spill). Accordingly, the district court did not err in granting summary judgment in favor of Walmart.

**AFFIRMED.**

---

courts to any degree."). Regardless, in *Perez-Brito*, we acknowledged that the length of time between actual notice and a fall is a relevant—although not necessarily conclusive—consideration. *Id*. at 670. And although we held in that case that the defendant had a sufficient opportunity to correct the dangerous condition even though only a minute and a half passed between the store's actual notice and the customer's fall, our holding was limited to the specific factual circumstances of that case. The facts of Zhanadova's case are distinguishable, and *Perez-Brito* does not persuade us that summary judgment was inappropriate here.